# EXHIBIT A TO DECLARATION OF JAMES H. SEYMOUR RE STATUS OF APPEAL AND CHANGED CIRCUMSTANCES

# CASE NO. 07-03715 MMC

Michael D. Cooper (Bar No. 42761)
Daniel Rapaport (Bar No. 67217)
**WENDEL, ROSEN, BLACK & DEAN LLP**
1111 Broadway, 24th Floor
Post Office Box 2047
94604-2047 Oakland, CA  94607-4036
Telephone:  (510) 834-6600
Fax:  (510) 834-1928

Attorneys for Defendants and Cross-Complainants
Tomas Hill and E.J. Pean

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN MATEO

| | |
|---|---|
| JENNIFER MOORE,<br><br>    Plaintiff,<br><br>vs.<br><br>RICHARD LEE HATFIELD, et al.,<br><br>    Defendants.<br><br>AND RELATED CROSS-ACTION | Case No.  CIV 450 151<br><br>**DECLARATION OF MICHAEL D. COOPER IN SUPPORT OF JOINDER ON BEHALF OF SETTLING PARTIES (TOMAS HILL AND E.J. PEAN) TO THE MOTION TO ENFORCE SETTLEMENT**<br><br>Date:     August 31, 2007<br>Time:    9:00 a.m.<br>Dept:     20 |

I, Michael D. Cooper, declare:

1.    I am an attorney licensed to practice by the State of California, and am a member of the law firm of Wendel, Rosen, Black & Dean LLP, the attorneys of record for Tomas Hill and E.J. Pean.  The following facts are true of my own personal knowledge and if called upon to do so, I would and could competently testify thereto, except as to those matters that are alleged upon information and belief and as to those matters, I believe them to be true.

2.    I make this declaration in support of the joinder by Tomas Hill and E.J. Pean, the Joining Parties, to the Motion to Enforce Settlement ("Motion") and the Memorandum of Points and Authorities in Support of the Motion filed by Jacqueline Jackson, David Fenton and

1  Jacqueline Fenton. The Joining Parties join in the request for the entry of a Judgment in favor of
2  all of the Creditor parties to the Settlement Agreement, in the full amount owing under and in the
3  proportionate amounts as set forth in and according to the terms of the Settlement Agreement,
4  plus interest at 10 percent per annum as provided by California Civil Code section 3289(b) and
5  for legal fees and costs as provided by Par. L. of the Settlement Agreement.

6      3.    In February 2007, certain parties to the Consolidated Actions[1] pending before this
7  court reached a settlement which was memorialized as the Settlement Agreement and Mutual
8  Release ("Settlement Agreement") and executed by the parties thereto, including the Creditors
9  (who are identified in the Settlement Agreement and Exhibit A thereto), Richard Hatfield
10 ("Hatfield"), Alliance Financial Capital, Inc., Alliance Financial Capital Holdings, Inc. ("AFCH")
11 and Industry Funding Corporation (collectively referred to in the Settlement Agreement as
12 "Alliance" and referred to herein as the "Alliance Parties"). A true and correct copy of the
13 Settlement Agreement is attached as Exhibit A to the Declaration of David Balter filed in support
14 of the Motion. All of the parties to the Settlement Agreement are set forth in the Settlement
15 Agreement, and the respective amounts owing to each Creditor party are set forth in Exhibit A to
16 the Settlement Agreement.

17     4.    The court approved the Settlement Agreement as a good faith settlement at a
18 hearing on May 11, 2007. The order approving the settlement as a good faith settlement was
19 entered on May 31, 2007, and an amended order was entered on June 15, 2007. See Exhibit B to
20 the Declaration of David Balter filed in support of the Motion.

21     5.    Under the terms of the Settlement Agreement, within 60 days of this court's
22 approval of the Settlement Agreement as a good faith settlement, the Alliance Parties agreed to
23 pay the sum of $2 million to the Creditors set forth in Exhibit A to the Settlement Agreement.
24 See Settlement Agreement, Par. C.1.-C.2.

---

[1] The Consolidated Actions are *Jacqueline Jackson, et al. v. Alliance Financial Capital, Inc., et al.*, San Mateo Superior Court Case No. 454150, and *Jennifer Moore v. Richard Lee Hatfield, et al.*, San Mateo Superior Court Case No. 450151.

*DECLARATION IN SUPPORT OF JOINDER ON BEHALF OF SETTLING PARTIES TO MOTION TO ENFORCE SETTLEMENT*

6. Since the Settlement Agreement was approved by the court on May 11, 2007, the Alliance Parties were required to perform and to pay the $2 million to the Settling Parties not later than July 11, 2007.

7. In addition, under the terms of the Settlement Agreement, the Alliance Parties were required to provide an accounting of the collections of certain accounts receivable to the Creditors on a quarterly basis, (i.e., every three months). See Settlement Agreement, Par. 5.c.iv. The first quarter following approval of the Settlement Agreement ended on June 11, 2007, and the accounting was due at that time.

8. As of the date of the Motion, Joinder and this Declaration, the Alliance Parties have not performed and have breached both the obligation to pay the $2 million and to provide an accounting of the accounts receivable collected. The Alliance Parties have failed to pay my clients, Messrs. Hill and Pean, the amounts owing to each of them under the Settlement Agreement. In addition, I represent other Creditor parties to the Settlement Agreement who are not parties to this action, and the Alliance Parties have not paid any amounts owing to my other clients. Last, to the best of my knowledge, the Alliance Parties have failed to pay any of the other Creditors to the Settlement Agreement the amounts owing to them under the Settlement Agreement.

9. Since the court's good faith approval of the Settlement Agreement on May 11, 2007, I have had several communications with Martin Eisenberg, counsel for the Alliance Parties. On June 28, 2007, Mr. Eisenberg sent me an email stating that there was "no way" that Hatfield and Alliance Financial Capital, Inc. could obtain the $2 million funding and to pay it to Creditors by July 10, 2007, the date performance was due. A true and correct copy of Mr. Eisenberg's email is attached hereto as **Exhibit A**. Thereafter, on July 16, 2007, Mr. Eisenberg again stated in an email to me that as of that date, Hatfield and the Alliance Parties had not been able to secure and pay the $2 million and requested additional time for Hatfield's required performance. A true and correct copy of Mr. Eisenberg's July 16, 2007, email is attached hereto as **Exhibit B**. Mr. Eisenberg attempted to argue that Mr. Hatfield had 60 days from the dismissal of the involuntary bankruptcy petitions pending in the United States Bankruptcy Court for the Northern District of

1  California to perform under the Settlement Agreement. Those petitions were dismissed by orders
2  entered on June 26, 2007. However, it is clear that such an argument was and is without merit
3  because the Settlement Agreement is clear and unambiguous that the Alliance Parties were
4  required to perform within 60 days of the Superior Court's approval of the Settlement Agreement
5  (See, Settlement Agreement, Par. C.1.-C.2.) and the filing of the motions to dismiss the
6  bankruptcy cases and the ultimate dismissal of those cases was independent of the Alliance
7  Parties' obligation to perform. See Settlement Agreement, Par. C.7.

8      10.    In addition to the foregoing, by an email to Mr. Eisenberg dated June 29, 2007, I
9  demanded that the Alliance Parties provide an accounting of the collections of the accounts
10 receivable as required under Par. 5.c.iv. of the Settlement Agreement. A true and correct copy of
11 my June 29, 2007, email to Mr. Eisenberg is attached hereto as **Exhibit C**. In response, as part of
12 his July 16, 2007, email, Mr. Eisenberg promised to provide an accounting of the collections of
13 the accounts receivable by the end of that week, which would have been July 20, 2007. No
14 accounting has been provided to me, and to the best of my knowledge, no accounting has been
15 provided by the Alliance Parties to any other Creditors to the Settlement Agreement.

16     11.    The Joining Parties, as well as all of the other Creditors to the Settlement
17 Agreement have performed all of their obligations under the Settlement Agreement. I believe that
18 the only obligation of the Creditors under the Settlement Agreement was the agreement of
19 Creditors Rnjak, Spees and Erickson to file a petition to dismiss the involuntary bankruptcy cases
20 against Hatfield and AFCH upon the approval of the Settlement Agreement as a good faith
21 settlement. See Settlement Agreement, Par. 7. I represented Creditors Rnjak and Spees in the
22 bankruptcy cases, and those Creditors performed their obligation when I filed motions to dismiss
23 in each bankruptcy case on May 25, 2007; both of the bankruptcy cases were dismissed and
24 orders were entered on June 26, 2007.

25     12.    Pursuant to the provisions of Paragraph L. of the Settlement Agreement, should
26 any party seek to enforce the Settlement Agreement, the prevailing party is to be awarded his or
27 her reasonable attorney's fees and costs in such a proceeding. See Settlement Agreement, Par. L,
28

lns. 4-8. Accordingly, the moving and Joining Parties are entitled to their reasonable legal fees incurred in enforcing the Settlement Agreement.

13. Pursuant to California Civil Code section 3289(b), the Creditors to the Settlement Agreement are entitled to interest at 10 percent per annum from the date of the Alliance Parties' breach of the Settlement Agreement. Here the Alliance Parties breached the Settlement Agreement on July 10, 2007, by failing to pay the $2 million to the Creditors to the Settlement Agreement, and therefore those parties are entitled to interest on the $2 million from and after July 10, 2007, at the rate of 10 percent per annum as part of its Judgment enforcing the Settlement Agreement.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on August 9, 2007, at Oakland, California.

*/s/ Michael D. Cooper*
Michael D. Cooper

DECLARATION IN SUPPORT OF JOINDER ON BEHALF OF SETTLING PARTIES TO MOTION TO ENFORCE SETTLEMENT

-----Original Message-----
**From:** Martyat111@aol.com [mailto:Martyat111@aol.com]
**Sent:** Thursday, June 28, 2007 5:51 PM
**To:** Michael Cooper
**Cc:** dbalter@dpf-law.com; lloyd@lloydstrobellaw.com; michael@stjames-law.com
**Subject:** Re: FW: Scanned document <3 pages ~102 KB> -- 6/28/2007 5:05:50 PM

   I've had parts of the following conversation with some of the recipients here.
   There is no way Richard and AFC can get this $2M funded and paid to the creditors by 7/10. Please recall that a year ago he went to lenders (specifically Textron) for financing, made inroads but when they learned of the pending litigation which was neither terminated nor soon to be terminated, they got cold feet. Richard informs me that lenders just do not reconsider once they turn down a proposed transaction. There was certainly no contemplation by Richard and likely not by others here that an order dismissing the bankruptcy would require 46 of the 60 days following hearing on the state court settlement motion to obtain. He's needed that to make any kind of inroads on obtaining a loan to fund the settlement.
   While there seems to be an undercurrent, if not blatant, blame placed upon Richard for not having this financing lined up, that bankruptcy proceeding sure wasn't HIS idea. And for him to walk into a lender while the subject of a bankruptcy proceeding and fill out the most preliminary of application information which would call for disclosure of that proceeding, would be/would undoubtedly have chilled that lender and removed it from the cadre of available ones.
   How long will it take from now. Weeks I am sure. I've asked Richard for an anticipated time table now that he has the bankruptcy order in hand.
   I received the amended order on the settlement motion on Tuesday, upon return from a trip out of town. I gather it arrived at my office on Friday. I have forwarded that to Richard.
   In-house counsel for AFCI resigned a couple of weeks ago due to her father back east being very ill. She's going back there for a fairly long visit/duration. It leaves me saddled with a couple of collection actions proceeding to trial in the next 60 days unless a substitute in-house counsel can be engaged in time.
   Richard needs to talk to some of the represented investors. Can a very brief stipulation (and proposed order) vacating the "gag order" be prepared and circulated and signed via fax which I can send to the court. Richard is just not going to risk contempt of court and response of Judge Forcum by disregarding that order. That is particularly so where there are expressions of "angst" through counsel concerning the status of this matter. I would suggest it permit him to talk to represented parties excepting plaintiff Jennifer Moore. That way Mr. Seymour's signature to the stipulation is not required. (That gag order was also something he didn't propose or advance.)

                        Martin Eisenberg

                        Martin Eisenberg


**************************************
See what's free at http://www.aol.com.

8/8/2007                                  **Exhibit A**

-----Original Message-----
**From:** Martyat111@aol.com [mailto:Martyat111@aol.com]
**Sent:** Monday, July 16, 2007 2:47 PM
**To:** Michael Cooper
**Cc:** dbalter@dpf-law.com; lloyd@lloydstrobellaw.com; michael@stjames-law.com
**Subject:** Alliance Financial

    I report developments concerning assembling the $2,000,000.00 for disbursement to the creditors.
    Mr. Hatfield has been moving forward to securing the financing to fund the settlement agreement. The opposition to dismissal of the bankruptcy and the time it took to obtain the bankruptcy dismissal prevented submission of material to lenders. The pendency of an active bankruptcy proceeding by the principal who would be managing the borrower's operations would have greatly decreased if not entirely eliminated probabilities of securing credit. The bankruptcy having been dismissed, Mr. Hatfield is in a position to work with funding sources.

    Candidly, it is fair to state that it is likely a 60-day process from the time that bankruptcy was dismissed to obtain the settlement funds. There was no conception at this end that dismissal of the bankruptcy was, itself, going to require 60 days. I can only implore and thank you for your patience in this process.

    Alliance's in-house counsel handling many of the collections resigned a few weeks ago. Her father had become increasingly ill and she has gone to the east coast to be with him for what is anticipated to be a long-term stay. Some of the most immediate matters handled by her fell upon me. Alliance has found substitute in-house counsel with collection experience.

    Alliance has obtained recovery of some funds from the collection accounts. Request has been made for a summary of those collections. I understand they have gone to fund the attorneys' fees associated with their collection and to fund the $25,000.00 cost and expense pool. I have asked Mr. Hatfield to provide me with a summary of those receipts by week's end to forward to you.

    Mr. Hatfield needs to communicate with several of the represented parties concerning use of their funds as capital for the entity to purchase Alliance's existing assets. His communication with those parties remains enjoined by Judge Forcum's order. While I received your several e-mails raising no objection to Mr. Hatfield communication with your clients upon that subject, it is best that the arrangement be memorialized by a stipulation upon which I can obtain an order of Judge Forcum withdrawing or modifying the order. I intend to get that done and out via e-mail attachment to each of you tonite.

                                     Martin M. Eisenberg

****************************************
Get a sneak peak of the all-new AOL at http://discover.aol.com/memed/aolcom30tour

**From:** Michael Cooper
**Sent:** Friday, June 29, 2007 2:09 PM
**To:** 'Martyat111@aol.com'
**Cc:** 'Lloyd Strobel'; dbalter@dpf-law.com; 'Michael St. James'
**Subject:** Settlement Agreement Accounting

Marty,

In accordance with paragraph 5.c.iv. Of the Settlement Agreement and Mutual Release, please have your clients provide an accounting of the status of the collections of accounts receivable. It has been more than 3 months since the execution of the Settlement Agreement and the first accounting is past due. Thank you.

Michael

Michael D. Cooper
Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA 94607
Tel: (510) 834-6600
Fax: (510) 588-4942
mcooper@wendel.com

**Exhibit C**